Good morning, your honors. Daniel Selmy for the petitioners. Your honor, I'd like to reserve four minutes, if I could. Okay. We'll try and help you monitor that. Thank you, your honor. This appeal is about the Federal Energy Regulatory Commission's consistency in applying its rules and its prior decisions to motions to intervene. Our basic position is this, that FERC has acted arbitrarily by acting inconsistently with a decisional line of authority allowing intervention in cases under the National Environmental Policy Act. And it did so in a case in which there was no other reason to deny intervention. There was no opposition, there was no disruption of the proceedings, there was no other party that could represent the interests of the petitioners, and there was no prejudice or no harm from it. Additionally, we believe that we have clearly, as a matter of law, met the good cause requirement for late intervention in a case such as this. I want to make sure that the Court fully understands the posture, and it can be explained relatively easily. The case starts by an application to change the water flow in Middle Piru Creek, generated by a concern raised by the Federal Government of impact on the Arroyo Toad. The application would have resulted in no minimum flow during the summer. The period for intervention ends in July of 2005. Pardon me. One year and nine months later. Can I ask one just background clarification question? The stream has been under the proposed flow schedule since 2005. Is that correct? And that's they're seeking to make that permanent through this proceeding. That's correct. And are the studies that have been mentioned by California Trout and Friends, were those conducted prior to or after the change in the stream flow regimen? The two studies were, well, one is they were completed during the period after the stream flow was changed by the interim order. So we're talking about that interim period there. Was the data collected before the change in? I'm not sure. I can check that, Your Honor. I'm not entirely sure, frankly. Thank you. But to follow up on your point, it was one year and nine months later. And during that period of time, the two important things that happened fundamentally changed the application. I mean, these weren't minor matters. The first was that the National Marine Fisheries Association found that the rainbow trout in the creek were genetically the same as the steelhead, the endangered species below the dam, which separates the part of the creek where the water flow is at issue from the rest of the river. What that means is that we now have the possibility of using the California rainbow trout in the stream to help preserve the steelhead down below. Of course, the water flow would have prevented that because there's going to be no water flow during the summer. The second thing that happened was this report came up, the Sandberg Report, prepared for the Department of Water Resources, but it surfaced only because my clients found it. And that report found that the endangered species at issue in the creek, the arroyo toad, did well under relatively high summer flows. The reason for the amendment was to lower the water flow because of concern for that very toad. It called into question the very reason for the amendment. Those are the two critical facts that caused my client to intervene, and it intervened the very month. The Caltrout intervened the very month it got the Sandberg Report. It acted quickly there. And the intervention was one year, nine months after the intervention period closed. My other client intervened shortly thereafter. And during the period of time between the initial intervention period closed and the time we moved, absolutely nothing happened in this proceeding. So if you're talking about us being late, there's been nothing in the interim period. Oh, I'm sorry. Thank you, counsel. It reminds me that the Sandberg Report covered the new flow regime, so it did deal with the new flow regime. Thank you. So FERC has a four-part test for intervention, raising factors I think that are familiar in any intervention cases. And three of them are simply not at issue here. There's no disruption of the proceeding because nothing happened. There was no other party that could have raised the issues we did because there weren't any other parties other than the applicant itself. And there wasn't any prejudice or burden on any other party because nothing had happened, so that there could have been a prejudice or burden. It turns out that FERC has a body of decisions. And our representation to the Court is this. If the Court looks at those decisions in cases where FERC has dealt with intervention, asking for intervention on the environmental analysis, those cases consistently would have allowed intervention under circumstances that were actually worse than the ones my client had. And, of course, if instead of doing an environmental analysis, What cases did you have in mind? The cases we had in mind, the key cases, the Cameron case, Your Honor, it's a 2007 decision by FERC. There are three other previous ones, two in 2002, Colorado Interstate Gas and Columbia Gas. And in the 2003 case, Public Utilities District of Okanagan County. And in the Cameron case, how long was the period before intervention was allowed? Intervention was allowed one day after the comment deadline had passed. So they were one day late on their motion to intervene? They were one day late. It was a late intervention. They were one day after the comment period on the EA. We were within the comment period on the EA. So we were before. It had not even expired when we made our motion. It had expired. What was the period for intervening in the Cameron case? The period in the Cameron case was, let's see, well before that. The period had expired. I have to check the actual time. Certainly that wasn't the issue in the case. The issue in the case, from our standpoint, there were two significant issues. First, it was before the merits like ours was. But more importantly, FERC's regulation allows automatic intervention as a matter of right if it had been an environmental impact statement. In the Cameron case, FERC cites that rule and says as part of why it allows intervention. I mean, obviously it has a policy that intervention ought to be at least encouraged because it automatically allows it. In fact, if they had done an environmental impact statement, this whole case would have gone away. It would have gone in as a matter of right. So they cite that policy and they allow it in. And we say, well, all right, that's the key case. It's your 2007 case. And we're better than that because at least one of my clients filed during the comment period. We were earlier. Otherwise, the cases are indistinguishable. And the response that FERC gives, both in the rehearing order at page 18 and in the brief at page 35, is that the Cameron case is an exception to our usual practice. They want to discard the case. In fact, however, if the Court reads the three other decisions that I cited to you, Cameron's consistent with those. Interventions allowed in one of those cases, the Colorado case, after the intervention period, the EA comment period, rather, had expired. In the other two cases, before the comment period, it expired, but consistently saying we're going to allow people in just as we would let them in if it had been an environmental impact statement. Why didn't you intervene? Well, we did intervene for a couple of reasons, I think, Your Honor. One was, frankly, they don't have resources to intervene in every case. They have to be careful to put the resources where it's important. Why would it be required to intervene? Pardon me? Did you just file a motion? You have to file a motion, but it didn't. But according to what you told us, then nothing happened for the next 21 months, so. I'm sorry. I should answer your question more directly. I will tell you exactly why they didn't intervene. At the time, it was well understood by environmental groups like my clients that intervention in NEPA cases was allowed, in the EIS cases was allowed at a later date, and they also understood that intervention was probably going to be allowed, absent any big problems, for EA cases as well. They relied on that. Frankly, they were shocked when they were denied intervention. And I'm just telling you that honestly. They couldn't believe that at this point they wouldn't get in. And, you know, Your Honor, I'm sorry, they won't make the mistake again if this decision, if the Court affirms for, I mean, they'll just simply have to intervene in everything and then sort out later whether it's important or not. And I think that that idea, the fact that you'd have to intervene and that what would happen later in this case wouldn't matter, is going to result in not only a lot of unfortunate interventions that do no good in cases that turn out not to be important, but it's also going to mean the idea of late intervention just becomes sort of meaningless. Is there any consequences to your clients intervening at that early stage? There wouldn't have been any cost to your client, presumably, during the 21 months. And then they're in the case. They're not obligated to take an appeal, but it gives them standing to take an appeal from any case. So what's the downside for intervening at the early period? I don't think there is, Nebby, Your Honor, especially after this holding in the case. I understand you're now saying that if First's decision stands, that your clients are going to want to intervene in all of these cases. I'm trying to figure out what's the downside to that. I don't think there is other than the effort to keep track of all the cases and follow them. But they were following it anyway. Well, and they were. And when they followed it, it turned out that this is one of those cases where important things happened. I mean, it's not every case where you get information like this that arises not out of the proceeding itself, but outside the proceeding. Two reports not prepared specifically for this. In fact, you know, I don't know what the Department of Water Resources was doing, but they never released the report. The report's critical to this decision here. It's my client that raised that issue, Your Honor. Is the report before FERC? It is now. We put it before FERC in our comments. The comments that you're filing are the comments that you filed on the EA, which did not require you to have the status of an intervener. Is that correct? That's correct, Your Honor. We don't have to have status as an intervener. But, of course, there are significant consequences to not being an intervener. There's three of them, I think. The most important of them is that we can't file a petition for rehearing. We have no standing to do that. And as Your Honors well know in dealing with FERC cases, that's the critical juncture where FERC really concentrates on the specific issues. We can't do that. We can't have judicial review because we're not a party. FERC claims one of its arguments now is one of the reasons they didn't let us in is that we would have the potential to sue them. Well, we don't have the potential if they won't let us in. And then, Your Honor, I think there's a third very practical reason, and that is it's sort of like being an amicus curiae in front of the court. You just don't get as much attention paid to you if you're not a party. And that's why our clients, when they got this information, immediately said we do have to get in this and moved quickly. And there's no prejudice to anybody from the delay. And your clients, you've otherwise participated. You've been able to submit comments, get your studies into the record. Are you able to participate through oral argument in any of the proceedings? There is no proceeding so far to participate in. That's one of the things that's sort of ironic about this. The agency still has not made a final decision. One year later, it completed the environmental analysis. It still hasn't made a final decision because it has to await an action by the State Water Resources Control Board. And is there anything that indicates when the State's going to act on the petition? The State has acted. There's been a petition for re-hearing filed on that. And so it will, you know, it's something. The State's approved the modification. We're getting to the end point here where things are going to happen. But my point is, I mean, the agency certainly knew there was going to be an extended period of time here in which nothing would happen. This isn't like one of those cases where they're trying to cite an LNG facility where what you have is, in essence, a detailed trial with bifurcated issues and discovery and, you know, hearings in front of the administrative law judge. That isn't this kind of proceeding. That's the kind of case when I think you're late where there can be significant disruption. A couple of the cases that FERC cites were like that. The Erie Boulevard case. Ten years later, the party seeks to intervene after a settlement, after another party represents their interests, and after FERC issues an order saying we can't – you're arguing for an alternative site for this facility. We legally can't do that. I mean, that's the kind of case where there's no question you deny intervention after a period of time. We think we're at the other polar extreme from that, Your Honor. You know, we were there, you know, we were there one year and nine months later, but it might as well have been a month later because nothing happened in the interim. No conceivable prejudice other than to simply now keep us out from any formal proceedings. You know, it's an abusive discretion standard, right, on review. And I guess the question is, you know, is there anything specific – just I'm trying to understand your argument. If there's an environmental assessment, an EA that's submitted, is it your view that that's ipso facto good cause for intervention under the FERC rule? Your Honor, I wouldn't go that far. I mean, maybe that's been the custom, but, you know, have they abused their discretion by, you know, not honoring that custom? No. Our argument is that they've abused their discretion under the facts of this case in light of their precedents. You know, there's certainly discretion in dealing with this kind of motion, but the agency's discretion has been narrowed. It's been narrowed by their rule. It's been narrowed by the fact that they automatically let you in on an EIS case, which indicates, I think, at a minimum, that in a case where you're arguing an EIS ought to be prepared, there's got to be some good reason not to let you in at the same time. And secondly, it's been – their discretion's been narrowed by their decisions in which they've consistently let parties in even after us. That's where the abuse of discretion lies, Your Honor. We don't argue that simply because there was an EA they had to let us in automatically, but under the circumstances of this case. Pardon me, Your Honor. Judge Gould with a question. You know, does it contribute to an abuse of discretion if there are factors in their regulation that they don't address, like whether any other party could present your views or whether there is prejudice? They didn't really address those as I read what they said. I think that's correct, Your Honor. The Kovella case in the Ninth Circuit says that all the factors have to be addressed, and I think we can debate whether the rule requires that. I would suggest this, though. When the Court reads the decisions, it will see that in many of those decisions, the agency does address those factors as they become relevant. It didn't address them here, and the reason it didn't was they're all on our side. There's no conceivable argument that there's a disruption, that there's another party, or that there's any prejudice. And so if they had addressed them, given this record, they could only have concluded that those factors weighed in favor of intervention. What is the significance, if any, of the fact that they denied intervention to the Fish and Wildlife Service as well? From my client's standpoint, there is no significance. I think, though, the fact that the Fish and Wildlife Service, that NIMFS, it's called, sought to intervene suggests that they, too, realized that in the interim, important issues regarding the endangered species had arisen and wanted to bring those to the agency's attention. And their motion was washed away with ours. They did not choose to appeal this, though. No, they didn't, Your Honor. Very rarely would the Federal Government sue itself. May I reserve the remainder of my time? Of course. Thank you. Good morning. I'm Catherine Henry on behalf of the Commission. California Trout and Friends of the River have argued before this Court that the real issue here is consistency with FERC's precedent. FERC would submit that the real issue here is whether the Commission has abused its very broad discretion in applying its procedural rules to the facts of this case. As the Court is aware, the abuse of discretion standard is quite a strict one. The Court has defined that there was very clear error, very, very egregious circumstances here. Counsel, Counsel, Judge Gould with a question. Like, I do understand the general abuse of discretion standard. What I would find most helpful would be if you could take the regulation that FERC has on late intervention and discuss each of the four factors, how you see the evidence, and advise whether FERC commented on that factor. Yes, Your Honor. I'd be happy to do that. The regulation at issue here is Rule 214. That's 18 CFR Section 385.214. I'd first like to point out that 214B3 states that if a motion to intervene is filed after the end of any time period established for interventions, such a motion must, in addition to complying with certain other procedural elements, show good cause why the time limitation should be raised. And again, I'd like to emphasize that the language there is that the motion must show good cause. We then move to Rule 214D, which are the standards that govern what factors the commission may consider when acting on any motion for late intervention. The first, and we would submit the most important factor, certainly under the precedent that we've cited in our brief, is whether the movement had good cause for failing to file the motion within the time prescribed. The commission's position is that the movement really did not establish good cause. They did not have convincing reasons. There certainly have been cases. Is the commission there distinguishing between good cause to be late versus good reasons for concern? In other words, one of those is a substantive concern. The California Tribe has said, look, we've got new reports. We've got new information. These are reasons why these are things that ought to be before the commission. And that's different from coming forward and saying, gee, we didn't get notice or the kids were sick or I just mismarked it on my calendar or something. That might satisfy good cause in a procedural sense. But the other would be, gosh, you're going to miss, the commission is really going to miss the boat and they're really going to regret it later on. So which is it here? Yes, Your Honor, I think it can be both, depending on the factual circumstances. One thing that's important to remember is that each case that involves a motion for late intervention is going to involve different facts, and the commission is going to look at those facts and exercise its broad discretion in making a decision whether in that case the movement has presented good cause. In this case, there really was no good cause why these petitioners could not have intervened earlier. They were certainly aware of the proceeding. In fact, California Trout filed three sets of comments even before the intervention deadline, and those comments specifically addressed their concerns with the endangered species, the steelhead trout. That was clearly a foreseeable issue, and the commission expects that entities will move to intervene to protect their interests in issues that are foreseeable, and there's no question that this was a foreseeable issue. The reports in this case that were submitted, and one was two reports and one decision by the National Marine Fisheries Services. Two of those were, at least California Trout was certainly aware of two of those a year before they even filed a motion to intervene. They could have intervened at that point. They claimed that they weren't aware of this third report until right before they intervened. However, they've offered no reason why they couldn't have intervened, even in 2006 when they even filed comments on, I believe, the NIMPS decision. But they still didn't bother to intervene and protect their interests as much as they could have. So we would submit that the new reports, there may be instances where there's new information that would justify, would provide good cause for late intervention. We submit that that is not the case here. Are all of the reports that California Trout has cited as sort of new information, are those all before the commission at this point as comments on the EA? Yes. Yes, they are. So presumably the commission will deal with those in some respect, even though California Trout doesn't have the status of an intervener. That's correct. And I think that gets to another important point. Would it be arbitrary and capricious of the commission to ignore such reports, even though they were provided by a non-party? That would come in a challenge, a judicial challenge to the sufficiency of the decision, which has not been issued. The final decision hasn't been issued on the amendment. If FERC said we're not going to, we don't consider comments by people who aren't parties, there's nobody to take an appeal on that and say, wait a minute, we've got these huge reports that are clearly credible, quite relevant, and you didn't take them into account. I think it's very important to correct perhaps a misimpression that the petitioner's views were not considered in this case or would not have been considered. NEPA allows parties to comment and participate regardless of their party status in the underlying decision. The comments that were filed by the petitioners in this case must be considered by FERC, but it doesn't matter whether they're a party to the proceeding or not. And, in fact, the final environmental assessment has been issued in this case. It was issued in the past year, and the comments of California Trout were considered in that. I would just like to, at some point, even if truncated, to address the other factors in the way. Sure, I'd be happy to. Good cause is mandatory. That's the main thing you were talking about. But the discretionary factors may be considered, or at least on my mind, as relevant to whether the agency was arbitrary. So I would like you to answer that. Right. I'm sorry that I didn't get to those before. The ‑‑ I would point out that we have cited cases in our brief that states that a finding of no good cause in and of itself is sufficient to find, to deny a late motion for intervention, even if the other factors are not addressed. However, the commission did address and did conclude that there would be a disruption of the proceeding, prejudice to and additional burdens upon the existing parties. Why would there be a disruption to the proceeding? Excuse me? Why would there be a disruption to the proceeding? I think the commission believes that inherently late intervention at a later stage of the proceeding will disrupt the proceeding and prejudice the interests of other parties. And I'm citing from the California Trout First Rehearing Order, which is ARI 21-2, Paragraph 8. And the commission stated that late intervention at the early stages of a proceeding generally does not disrupt the proceeding or prejudice the interest of any party. So it's ‑‑ the commission assumes that if there's intervention at the early stages, it will not disrupt. However, as the proceeding goes on, there is the potential to have disruption or prolonging of the proceeding by late disruption of the proceeding that might result from permitting intervention. And again, little 4, any prejudice to or additional burdens upon existing parties might result from permitting the intervention. There are any number of ways that a party can prolong proceedings. The commission has an interest in proceedings not being prolonged by parties who have slept on their rights. In this case, we cited in our brief some examples of how the proceeding could be prolonged, which ‑‑ and these examples were even used by California Trout Friends of the River in their brief, which was that they could file for rehearing of a finality of the decisions by FERC. Another example that I would like to use is under Rule 212 of the commission's procedures, only a party can file a motion. And there are any number of motions that a party can think of to file to prolong a proceeding. For example, in this case, and this is not part of the record, but since it came up in Petitioner's argument, the state agency has now issued its water quality certification that has been appealed. The water quality certification is really the last step that FERC needs to wait for before it can rule on the license amendment. And the petitioners in this case have filed a motion to hold the proceedings in abeyance, pending the appeal of the state water quality certification. Now, they are not parties to the case. The opposition to the motion has pointed that out. But certainly if they were a party to the case, the other parties would be compelled to spend their resources responding to that motion. It could very well prolong the proceeding. And that is not in the interest of the commission under its procedural rules. And that's really the reason, one of the main reasons for requiring parties to intervene in a proceeding as soon as they have foreseeable interests that they're aware of, which is the parties. And you still have two more points to be responsive to Judge Gould's question. I hope that you will address those. I think there was really only one other point. You had the question of whether the interest is adequately represented. Yes, and that was the point. The commission, in fact, did address the adequate representation in its first, I believe its first order, on rehearing for California Trout. And that would, the record site is ARI 21-4, and this would be footnote 9. The commission stated California Trout asks the commission to distinguish the situation from that of Erie Boulevard. Although neither move-in's interests, and the other move-in that's referenced here is the National Marine Fisheries Service. Although neither move-in's interests are specifically represented in this proceeding, both California Trout and NMFS were aware of the impacts of the proposed amendment, and California Trout, as it admitted, has already participated in the proceedings. Consistent with Erie, the commission cannot allow parties to sit on their rights and enter into an ongoing proceeding where the situation does not turn out in their favor. The commission notes. And that footnote doesn't really seem to be addressing whether the appellant's interests will be adequately expressed by another party. It's going back to the commission's concern that they stepped on their rights, or there isn't good cause, because they knew about all this earlier. But it just doesn't seem, at least to me, to be addressing the adequacy of representation. If I could, Your Honor, I'd like to just continue with one sentence additionally in that footnote. The commission stated that while both California Trout and NMFS state that no other party to this proceeding can represent their interests adequately, this alone is not enough to overcome this failure to provide any convincing reason why they did not intervene in a timely manner. Therefore, I would submit that the commission did, in fact, consider the argument that the petitioner satisfied that factor in the regulations. You know, again, I would remind the Court of the precedent cited in our brief that states that good cause and finding of no good cause is sufficient in and of itself without addressing the factors. But I would submit that all of the factors, in fact, were addressed in this case. Okay. So what's the prejudice to the proceedings? The conditions were allowed. Well, again, the standard is a prejudice or additional burdens that might result, not that would result. And the answer to this question is that it might result because California Trout might take an appeal if they were granted the right to intervene, and that would delay the proceedings. There are any number of ways that a party can prolong a proceeding. Okay. Well, just give me what's the commission's view as to what the prejudice is that would result if California Trout were allowed to intervene? Again, Your Honor, I would go back. I think that the commission's view is that there really is an inherent risk of disruption and prejudice when a late intervention ‑‑ motion for late intervention is filed beyond the early stages of a proceeding. And we would submit that that was ‑‑ Right. But can't a party come in and overcome? You know, let's say that's a legitimate presumption under the regulation. I'm not sure it is, but, you know, why can't California Trout come in and rebut that as they've attempted to do here by saying, you know, it's a lengthy proceeding, you know, nobody ‑‑ we're commenting, there's really not that ‑‑ you know, there's really no true prejudice other than, you know, the risk of an appeal and the risk of appeal. If that's prejudice, then late intervention is never allowed. Well, I don't think that there's ‑‑ there certainly are cases where late interventions have been allowed, although I would point out that the weight of the precedent on late interventions passed the early stages of the proceedings to deny a late intervention. And therefore, the commission has been consistent with its precedent. The commission stated that the Cameron case, which petitioners rely on, was really an anomaly and did not represent the way that the commission handles its case. I think the commission was quite up front about Cameron and did not try to dodge that decision. If the board ‑‑ if we were to uphold the board's decision today, isn't the result of the board's decision that parties like California Trout are going to routinely intervene, the commission will actually create sort of more work for itself? Well, Your Honor, I think that the commission expects that parties will intervene once their interests become apparent. Certainly California Trout and Friends of the River are sophisticated entities. They have intervened as parties in other FERC hydroelectric proceedings. It is frankly a puzzlement why there was such participation, particularly by California Trout. And they did not bother to file a one or two‑page motion to intervene before ‑‑ well before the environmental assessment was issued. I think the commission welcomes parties that have interests to intervene at an appropriate stage when the interest is apparent, as it was in this case. Ms. Henry, could FERC, if it wanted to, could it promulgate a regulation saying we're only going to allow late intervention if an issue was unforeseeable? They could do that, right? They could do that, Your Honor. I don't believe that they are required to. Commission precedent certainly talks about the foreseeability of issues. It is, I believe, subsumed within the finding of good cause, as established by FERC precedent is part of the good cause factor. I think there have been cases where the commission has found that an issue was not foreseeable, and that has been a factor in finding that there was good cause for late intervention. I see. Okay, thank you. You're welcome. I have just a couple of minutes left, or seconds, yes, Your Honor. One thing that I just wanted to answer, Judge Bybee, I believe you asked in the Cameron case what the passage of time was. It was four months, as compared with almost two years here. Four months late on the time from when they were supposed to have intervened. And then one day after the comment period ended, but four months after the intervention, Your Honor. That's correct. So that contrasts with this case. And the other, just one other clarification I wanted to make in the Covello case, which we rely on, the Petitioners have stated that all of the factors for granting late intervention must be considered. We think that this was, it was dicta, first of all, in the Covello case. But if you look closely at the language in that case, Covello only talked about three of those factors that need to be balanced, and that was good cause, disruption, and prejudice or burden. And the Commission certainly addressed all of those in this case. Thank the Court. Thank you, Ms. Henry. Mr. Selmy, you have some time. Thank you, Your Honor. I have four points. First of all, if I got the quote right, inherent disruption at a later stage. We might think of motions to file. Denial of motions to intervene has to be based on facts, not, you know, possibilities that are dreamed up later. For example, Your Honor, the Cameron case was four months. I was going to retract that down as well. But the question is, when you have a passage of time, what happened in the interim that could provide some sort of prejudice or disruption? And the agency here is being entirely theoretical about disruption and prejudice. Judge Gould, the agency did not address all four factors. You still haven't heard it address all four factors in the terms of this case because it can't meet the other three factors. There's no facts in the record that would support a denial based on those. Third point, Your Honor, counsel said that we were aware. And that's correct. My clients were aware. And I would agree, they're sophisticated if poorly resourced clients. But I talked to you about the EA cases. The NEPA cases where late intervention is allowed there after, even though you have intervention as a matter of right, the agency is consistently allowed intervention after the time period there, in several cases, after the final EIS was done. In other words, the comment, the intervention period goes by, the comment period goes by, the final EIS comes back, and then the intervention goes. Two particular cases. There's a 2004 Colorado interstate gas case and a Florida gas transmission case. And in both of those cases, the parties were certainly aware. They participated in the interim. In the Florida case, they attended two public meetings. They filed numerous comments. That wasn't disabling even at that late date. Could FERC decide as a matter of policy that it would no longer allow late interventions, except in really, really, really unusual cases? I think it's possible, but there's two problems. One is that I believe that policy would be inconsistent with its encouragement of late interventions in the EIS cases where it allows it as a matter of right, certainly. And secondly, if it's going to adopt that policy, it would have to do so in a reasoned way, in which it developed the policy, explained its reasons, et cetera. It certainly didn't do that here. Even though it distinguished Cameron, which does appear to be, you know, provide some force for your argument. Your Honor, if Cameron really was inconsistent with what the agency has done, I would submit that when you read that opinion, what you would then read was, and here's the cases on EAs that contain our policies on late intervention. They aren't there, and they aren't there for a reason, because they don't support the idea that Cameron's inconsistent. They support what Cameron held. I think that's just logical. When you're reading that opinion, you're saying, well, where's the rest of it? It's not there. Two last points. One is the two studies that we rely on, both were completed during the interim period. And, in fact, our position is that FERC did not respond. We commented on them in the EA, and FERC did not give them the value to which they were entitled, and we think that, in part, is we're not a party. You know, it doesn't matter what we say anymore. Yes, it will respond to comments, but when you're not a party, you're not a party. And which brings me to my last point, Your Honor. Judge Bidey, you said, I believe your term was the commission was going to miss the boat. This isn't a prototypical ESA case. The prototypical ESA case is, you know, are you going to be able to build a dam? Is the dam going to destroy the species or the subdivision or something like this? We're talking about two already constructed dams in an area that's relatively pristine, with two endangered species and a third threatened species. The proposal, the issue here is the management of the already existing resource, how it's going to be operated. That ought to be a collaborational effort. The agency ought to be looking to get any conceivable information that parties have to offer to it. And my clients did have information to offer and expertise to offer. And instead of treating us as some sort of pariah because we didn't send the one-page paper in, this agency ought to be treating us as a welcome party that can help them solve a problem that all of us want to solve, and we believe there is a solution that allows all the species to thrive in this environment. If the Court has no more questions, we'll see you. Thank you, Mr. Selby. We thank both counsel for a fine argument. And with that, the Court will stand at recess until tomorrow.
judges: Gould, Bybee, Tymkovich